IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01855-REB-KMT

RICHARD REID,

      Plaintiff,

v.

MR. R. WILEY, Warden Federal Bureau of Prisons,
MR. A. GONZALES, United States Attorney General, and
MR. H. WATTS, General Counsel Federal Bureau of Prisons,

      Defendants.

---

## <u>AMENDED</u> RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case involves a claim that Defendants violated Plaintiff's First Amendment, Fifth Amendment, and Eighth Amendment rights in imposing Special Administrative Measures ("SAMs") on him. This matter is before the court on Defendants' "Partial Motion to Dismiss by Official Capacity Defendants" (Doc. No. 35) filed February 7, 2008.

## STATEMENT OF THE CASE

      The following facts are taken from Plaintiff's Prisoner Complaint and the parties' submissions with respect to this Recommendation. Plaintiff Richard Reid has named as Defendants Mr. Ronald Wiley, the warden of the United States Penitentiary - Administrative Maximum ("ADX") in Florence, Colorado; Mr. Alberto Gonzalez, the United States Attorney General; and Mr. Harrell Watts, General Counsel of the Federal Bureau of Prisons ("BOP").

(Prisoner Compl. at 2 [hereinafter "Compl."] [filed September 4, 2007].) On December 22, 2001, Plaintiff tried unsuccessfully to destroy American Airlines Flight 63 over the Atlantic Ocean by detonating explosives hidden in his shoes. (Mot. at 1; *see United States v. Reid*, 369 F.3d 619, 620 (1st Cir. 2004).[1] Plaintiff pleaded guilty to eight terrorism-related offenses. (*Id.*) On January 30, 2003, he was sentenced to life in prison. (*Id.*) Plaintiff states he has been incarcerated in ADX since February 2003. (*Id.* at 3.) Plaintiff asserts that Defendants have violated his First, Fifth, and Eighth Amendment rights by imposing SAMs restrictions on him. (Compl. at 4–8.) SAMs are special restrictions that may be imposed where determined to be "reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a) (2007). These SAMs may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism. *Id.* SAMs can be imposed initially for only one year, but may be extended upon a sufficient showing of danger. § 501.3(c). Plaintiff states SAMs restrictions were imposed upon his arrival at ADX in February 2003, and they have been renewed on a yearly basis. (Compl. at 4.) Plaintiff asserts he regularly has been denied access to religious services and materials, educational services, and recreational services available to other inmates. (*Id.*) Plaintiff also asserts he has been kept

---

[1]The court may take judicial notice of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. The court will take judicial notice of Plaintiff's conviction as a public record. *See United States v. Rodriguez-Chavez*, 153 Fed. Appx. 524, 528 (10th Cir. 2005).

under harsher conditions than other inmates.  (*Id.*)  Plaintiff states he has been prevented, since

2006, from writing to anyone except immediately family.  (*Id.*)  He also states he has been

denied access to media sources, such as television, radio, newspapers, and magazines.  (*Id.*)

Plaintiff seeks injunctive relief and money damages.  (*Id.* at 10.)

## PROCEDURAL HISTORY

Plaintiff's Prisoner Complaint was filed on September 5, 2007.  (Compl.)  Defendants

filed their partial motion to dismiss on February 7, 2008.  (Mot.)  Plaintiff withdrew his

individual claims against Defendants Wiley and Watts on February 22, 2008. (Doc. No. 46.)

The partial motion to dismiss addresses the only remaining claims, those made against

Defendants in their official capacities.  Plaintiff filed a response to the partial motion to dismiss

on March 3, 2008.  (Resp. to and Req. for Denial of Defs.' Partial Mot. to Dismiss [hereinafter

"Resp.].)  Defendants filed their reply on March 19, 2008.  (Reply in Supp. of Partial Mot. to

Dismiss by Official Capacity Defs. [hereinafter "Reply"].)  This matter is ripe for review and

recommendation.

## STANDARD OF REVIEW

*1.*      **Pro Se** *Plaintiff*

Richard Reid is proceeding *pro se*.  The court, therefore, "review[s] [his] pleadings and

other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).

*See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se*

complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a

*pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle her to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002)

### 2.     *Fed. R. Civ. P. 12(b)(1)*

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1) (2007). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding

in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*,

442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the

court may consider matters outside the pleadings without transforming the motion into one for

summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a party

challenges the facts upon which subject matter jurisdiction depends, a district court may not

presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to

allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve

disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*

### 3.      *Fed. R. Civ. P. 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pleaded factual allegations in a complaint are accepted as true and

construed in the light most favorable to the plaintiff.  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210,

1215 (10th Cir. 2007).  Further, the court is to make all reasonable inferences in the plaintiff's

favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In doing so, the

court distinguishes well-pleaded facts from conclusory allegations. *Ruiz v. McDonnell*, 299 F.3d

1173, 1181 (10th Cir. 2002) (citations omitted).

In *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), the

Supreme Court articulated a new "plausibility" standard, under which a complaint must include

"enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. The

issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will

prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer

v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Harlow v. Fitzgerald*, 457

U.S. 800 (1982)). In evaluating a 12(b)(6) motion to dismiss, it is appropriate to look to whether

the plaintiff has alleged each element necessary to establish a prima facie claim on which relief

can be granted. *See Ruiz*, 299 F.3d at 1182-83; *Sutton v. United Air Lines, Inc*., 130 F.3d 893,

902-903 (10th Cir. 1997). Although a plaintiff does not need to state each element of his claim

precisely, he must plead minimal factual allegations on those material elements that must be

proved. *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

## ANALYSIS

### 1.    *Claim One: Alleged First Amendment Violation*

Plaintiff asserts that his First Amendment free exercise rights have been violated because

(1) he has been denied access to news media given to other ADX inmates; (2) his ability to

communicate by telephone and in writing has been limited; (3) he has been prevented from

studying his religion by correspondence course; (4) he has been prevented from subscribing to

religious magazines; (5) he has been denied access to leisure library materials available to other inmates; and (6) he has been prevented from performing group prayers in a manner required by his religion. (Compl. at 4–5.)

It is long established that inmates retain their First Amendment rights while incarcerated. *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (addressing freedom of speech claims); *Cruz v. Beto*, 405 U.S. 319 (1972) (holding that inmates must be afforded a reasonable opportunity to practice their religion). An inmate's exercise of constitutional rights is necessarily limited, however, "both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell*, 417 U.S. at 822–23; *see also, O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Accordingly, prison regulations which impinge on an inmate's constitutional rights are valid if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held. *Snyder v. Murray*, 124 F.3d 1349, 1352 (10th Cir. 1997) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). "If either of these requirements is not met, a court need not reach the question of whether a legitimate penological interest outweighs the exercise of the First Amendment right because there is simply no 'free exercise' to protect." *Kay v. Friel*, No. 2:06–CV–23TS, 2007 WL 295556, at *2 (D. Utah Jan. 26, 2007) (citing *Carpenter v. Wilkinson*, 946 F. Supp. 522, 525 (N.D. Ohio 1996).

Defendants assert Plaintiff has not alleged facts sufficient to show Plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held. (Mot. at 5.) Plaintiff alleges that he is unable to take correspondence courses regarding religion, to subscribe to religious magazines, and to perform group prayers in a manner required by his religion; however, he does not allege what the tenets of his sincerely held religious practice are. (Compl. at 4–5.) The allegations contained in Plaintiff's Complaint are not sufficient to show a violation of Free Exercise Clause because Plaintiff does not show that group prayer is a central tenet of his religion, and Plaintiff has not alleged he is denied access to *all* religious materials. Furthermore, the allegations do not show the challenged restrictions substantially burden Plaintiff's exercise of his religion by denying him the ability to engage in the fundamental activities of his religion. Plaintiff's Complaint fails to allege any facts showing why access to news media is necessary for him to practice is religion, or how the inability to watch religious programming prevents him from practicing any type of religion. Therefore, Plaintiff has failed to state any facts which may lead the court to conclude what specific beliefs he might have, whether those beliefs are religious in nature, and whether those beliefs are sincerely held. *Snyder*, 124 F.3d at 1352.

In Plaintiff's response, he states his "failure to name which religion he follows does not negate [the specific religious belief requirement] especially as it is a matter of public record that he is a Muslim." (Resp. at 3.) Defendants assert this new allegation outside the Complaint should not be considered. (Reply at 2.) This court agrees and declines to consider Plaintiff's factual allegation that he is a Muslim. *See Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987) (stating the strict limitations under 12(b)(6) preclude consideration of matters outside

the complaint); Fed. R. Civ. P. 12(d) (2008) (indicating that it is within a court's discretion to exclude matters outside of the pleadings presented in a 12(b)(6) motion).

Accordingly, Plaintiff's First Amendment free exercise claims are properly dismissed. Defendants have not moved to dismiss Plaintiff's free speech claims (Mot. at 3, n.3; 4–6) and, therefore, the court has not addressed those claims.

## 2. *Claim Two*

### A. *Alleged Due Process Violation*

Plaintiff alleges Defendants have violated his due process rights by renewing the SAMs restrictions on a yearly basis without due process. (Compl. at 6.) The Defendants contend that the Plaintiff has not sufficiently pled a due process violation because he has demonstrated no loss of a liberty interest. (Mot. at 6–8.) To maintain his due process claim, Plaintiff must prove two elements: (1) that a recognized liberty or property interest has been interfered with by the Defendants, and (2) that the procedures attendant to that deprivation were not constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

#### I. *Evaluation of Protected Liberty Interest*

Prior to 1995, the existence and scope of an inmate's liberty interest, and therefore whether there was a due process violation, was determined by the language of the applicable regulations. However, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the United States Supreme Court held that the touchstone of the inquiry into whether a protected liberty interest exists is whether the conditions "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484.

In *Sandin*, the inmate was sentenced to 30 days in disciplinary segregation for an infraction of a prison rule. He contended that state prison regulations afforded him a liberty interest to avoid disciplinary segregation, such that he was entitled to due process. The Supreme Court avoided the old method of examining prison regulations to determine whether there was an entitlement, and instead employed a new method. It did this to avoid "two undesirable effects": (1) the creation of disincentives for states to codify their prison management procedures, for fear that they would create entitlements; and (2) the involvement of courts in the day-to-day management of prisons. *Sandin*, 515 U.S. at 482. Now, under *Sandin*, an inmate has a protected liberty interest to the extent that his confinement results in an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin* at 484.

Applying that new standard, the Supreme Court in *Sandin* considered whether the inmate's assignment to segregation represented a dramatic departure from the basic conditions of his indeterminate thirty years-to-life prison sentence. The Court specifically considered the conditions of confinement in disciplinary segregation and compared them with other types of segregation, finding no significant difference. It also compared the nature of the inmate's confinement in relation to what it would have been in the general population, finding no significant difference. Finally, it considered whether confinement in segregation would have any impact on the duration of his sentence, and found none. Based upon this analysis, it concluded that the inmate had no protected liberty interest.

Since *Sandin*, several cases have examined whether inmates had a protected liberty interest in avoiding a segregation assignment. Most recently, the Supreme Court addressed this

issue in *Wilkinson v. Austin*, 545 U.S. 209 (2005). In *Wilkinson*, the Supreme Court considered whether an inmate had a liberty interest to avoid placement in Ohio's Supermax facility and whether the procedures adopted by the State of Ohio for classifying and placing inmates into a "Supermax" prison provided constitutionally adequate process.

Guided by *Sandin*, the Supreme Court considered the totality of the conditions at Supermax to determine whether they imposed an atypical and significant hardship. The conditions were: (1) all human contact was prohibited, including conversations between inmates in neighboring cells; (2) the lights were on 24 hours per day, and if an inmate attempted to shield the light, he could be disciplined; (3) inmates could exercise 1 hour per day in a small indoor room, but were confined to their 7 feet by 14 feet cells for the remaining 23 hours; (4) assignment to Supermax was indefinite (except as limited by the term of imprisonment) with only annual reviews as to the propriety of placement; and (5) inmates otherwise eligible for parole were disqualified. The Court found that these conditions, viewed together, amounted to a sufficiently atypical and significant hardship such that there was a protected liberty interest subject to due process protection.

The Tenth Circuit has addressed several cases in determining whether particular segregation assignments gave rise to a protected liberty interest. These decisions demonstrate what conditions have and have not been considered atypical and significant enough to create a protected liberty interest.

In *Hill v. Fleming*, 173 Fed. Appx. 664 (10th Cir. 2006), an inmate claimed that the conditions and duration of his confinement in administrative detention, created a protected

liberty interest which entitled him to due process. The inmate claimed that he was in administrative detention at USP-Florence for 399 days, was confined to his cell 23 hours per day, was denied sick calls, educational privileges, work privileges, visitation, use of the telephone, access to the commissary, access to libraries, and access to the general population recreation area. The district court found a genuine factual dispute as to whether the inmate was deprived of a liberty interest, but, in the end, concluded that the defendants were entitled to qualified immunity. The Tenth Circuit affirmed. It agreed with the district court that it was inappropriate to enter summary judgment on whether a protected liberty interest existed.

In *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639 (10th Cir. 2006), an inmate alleged that his five-year assignment to administrative detention at USP-Florence implicated a protected liberty interest entitling him to due process. The plaintiff claimed that, at first, he was allowed sporadic indoor exercise less than once a week, and that prison staff restricted his ability to correspond with others, to possess stationery, to access library materials, and to obtain personal property. He claimed that he was later allowed to exercise two and one-half hours per week, that he sometimes lacked access to a radio or television, but that he did have access to educational and recreational programs, medical and psychological services, library services, and staff. He also was allowed one social call per month. The district court concluded that there was no protected liberty interest, and granted summary judgment for the defendants. The Tenth Circuit affirmed. In addressing whether the undisputed facts demonstrated a protected liberty interest, the Circuit first compared the conditions of the inmate's confinement with those in the general population. It determined that the diminished opportunity for exercise and social calls

was not an atypical and significant deprivation. The Tenth Circuit then compared the inmate's conditions of confinement with those in *Wilkinson*, and determined they were less onerous because the inmate had frequent contact with staff, the length of his sentence was unaffected, and his confinement was not indefinite and was instead limited to the duration of the pending murder investigation. As for the duration of the inmate's confinement in segregation, the Tenth Circuit declined to conclude that the length of time, standing alone, created a protected liberty interest, noting that the typicality of the length of the detention depended upon the reason for the inmate's assignment to detention, which in that case was a pending criminal investigation.

Most recently, the Tenth Circuit, in *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334 (10th Cir. 2007), considered the case of a inmate who lived as a woman but was anatomically male, incarcerated in a women's facility operated by the State of Wyoming, who was in administrative segregation for her own protection during her entire fourteen-month sentence of imprisonment. In analyzing whether there was a protected liberty interest, the Tenth Circuit followed *Sandin* and *Wilkinson*, and refined the liberty interest analysis. The Tenth Circuit has held that relative factors to consider in determining if a liberty interest has been created include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate. *DiMarco* at 1342. In this case, the Tenth Circuit employed a "totality" of factors analysis. In finding no protectible liberty interest, it considered that: (1) the inmate was assigned to segregation for her own protection, and for the safety of other inmates; (2) sending the inmate to

a men's prison was not a viable alternative; (3) the conditions of her confinement were spartan but not atypical of protective custody; (4) she was allowed out of her cell five and one-half hours per day; (5) she was denied interaction with other inmates; (6) she had access to the library, recreational, and religious facilities; (7) she had access to a number of prison programs; (8) assignment to segregation did not lengthen her confinement; and (9) her assignment to segregation was reviewed every 90 days. *Id.* at 1341–44.

From the above caselaw, this court discerns that determination of whether there is a protected liberty interest is highly fact dependent and requires consideration of a number of nonexclusive factors, viewed in their totality. No precedent squarely addresses the precise conditions of confinement alleged in Plaintiff's Complaint. This court is not prepared to say that the Plaintiff cannot prove facts to demonstrate a protected liberty interest. However, in light of the remaining requirements of his claim, he still has not sufficiently pleaded a constitutional defect.

## ii.     *Evaluation of Procedures*

Even a protected liberty interest exists, Plaintiff still has to prove that the procedures attendant to that deprivation were not constitutionally sufficient. *Kentucky Dept. of Corrections*, 490 U.S. at 460. Whether procedures attendant to a deprivation of a liberty interest are constitutionally adequate is a flexible determination driven by the demands of the particular situation. *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005). A relaxed set of procedures satisfies an inmate's challenge to a placement decision or conditions of confinement, and due process is satisfied as long as a state allows (1) a sufficient initial level of process, i.e., a reasoned

examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to the decision; and (3) safety and security concerns are to be weighed as part of the placement decision. *DiMarco* at 1343 (citing *Wilkinson*, 545 U.S. at 226–27).

Defendants assert Plaintiff received adequate due process procedure. (Mot. at 9–11.) The BOP maintains a four-step administrative remedy program, by which inmates such as Plaintiff may raise grievances. 28 C.F.R. §§ 542.10–19 (2007). The BOP administrative remedy program is designed to "solve problems and be responsive to issues inmates raise." *Kikumura v. Osagie*, 461 F.3d 1269, 1281, 1284 (10th Cir. 2006). The BOP's regulation on SAMs makes clear that inmates subject to SAMs may use this procedure, after the imposition of the SAMs, to challenge or request modifications to SAMs. *See* 28 C.F.R. § 501.3(e); *Yousef v. Reno*, 254 F.3d 1214 (10th Cir. 2004) (explaining that this procedure was the method by which an inmate could challenge his SAMs).

Defendants assert that the administrative remedy program provides several levels of review, and an inmate may obtain relief at any stage. The inmate must first attempt informal resolution of his complaint with the appropriate BOP staff member. *Id.* § 542.13. If no satisfactory resolution is achieved, the inmate may file an Administrative Remedy Request within twenty days of the event giving rise to the grievance. *Id.* § 542.14. If an inmate is dissatisfied with the outcome at Step 2, he may file an appeal to the Regional Director within twenty days. *Id.* § 542.15(a). If the Step 3 appeal is unsuccessful, the inmate may file another appeal to the BOP's General Counsel within thirty days. *Id.* § 542.15(a). The appeal to the General Counsel is the final administrative stage.

The court agrees with Defendants that his process provides a sufficient level of procedural due process to address Plaintiff's restriction. Plaintiff acknowledges that he had the opportunity to challenge the SAMs using the BOP's administrative remedy program and, in fact, did so. (Compl. at 5–7, 9.) When the 2007 SAMs were imposed on Plaintiff, he was provided with a factual basis for his classification. (*Id.* at 27.) Plaintiff then had an opportunity to present objections at four different levels of review, through the administrative remedy process. Because Plaintiff had a procedure to challenge the SAMs, the facts do not show a lack of adequate process. *See Travieso v. Fed. Bureau of Prisons*, 217 Fed. Appx. 933, 935 (11th Cir. 2007) (holding that an inmate had no liberty interest in lost credit for time over-served, and even if inmate did have liberty interest "the BOP's administrative remedy process provided [him] with any required due process"). Therefore, Plaintiff has failed to prove that the procedures attendant to that deprivation were not constitutionally sufficient, as required to maintain his due process claim.

### B.      *Alleged Equal Protection Violation*

Plaintiff contends Defendants violated his equal protection rights by (1) preventing his access to television and radio stations to which other inmates are allowed access; (2) keeping him in segregated conditions more strict than those to which other inmates are subjected without giving him any recourse for having the restrictions removed; (3) limiting his ability to communicate by telephone and in writing; (4) denying him access to leisure library materials available to other inmates; (5) denying him the ability to study his religion by correspondence

courses accessible to other inmates; and (6) preventing him from subscribing to religious magazines available for subscription by other inmates. (Compl. at 6.)

In order to succeed on an equal protection claim, Plaintiff must show that he was "similarly situated" to other inmates who are treated differently, and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). In addition, where the classification is not made with respect to any suspect category, the classification is subject only to "rational-basis review" and "must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320–21 (1993) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 134 (1977) (rejecting an equal protection challenge to prison rules where there was "a rational basis for [the prison's] distinctions"); *Hill v. Pugh*, 75 Fed. Appx. 715, 720 (10th Cir. 2003) (explaining that the classification of prisoners "'is accorded a strong presumption of validity'" and rejecting an inmate's equal protection challenge to a classification decision) (quoting *Heller*, 509 U.S. at 319); *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (rejecting as "not plausible or arguable" an inmate's equal protection claim based on the premise that there were "no relevant differences between [the plaintiff] and other inmates"). Plaintiff has not alleged his classification was made with respect to a suspect category.

Defendants contend that Plaintiff has not alleged facts sufficient to satisfy these two elements because, first, his generic reference to other inmates fails to allege that there are any

17

similarly situated inmates. (Mot. at 12.) Defendants argue Plaintiff is plainly not similarly situated to other inmates not subject to SAMs, and he does not allege any facts to the contrary. (*Id.*, citing *Fogle*, 435 F.3d at 1261 [holding that an inmate in administrative segregation was not similarly situated to other inmates not in administrative segregation, and rejecting his equal protection claim]). Second, Defendants argue ,even if there were similarly situated inmates, the BOP would still have a rational basis for imposing the SAMs on Plaintiff but not on other inmates because he is different from other inmates in the significant respect that he attempted to destroy an airliner over an ocean; then, after pleading guilty to the crimes underlying his term of imprisonment, he stated that he is still at war with the United States. (Mot. at 12.) Defendants assert that prison officials are entitled to consider these facts in treating Plaintiff differently than other inmates. (*Id.*, citing *Fogle*, 435 F.3d at 1261 [noting that prison officials can consider "whatever . . . seems relevant in making the qualitative judgment of how to classify an individual inmate"].)

The court agrees with Defendants that, although Plaintiff argues he is treated differently from others at ADX (Reply at 10), he does not identify any similarly situated individuals at the ADX who are not subjected to the same restrictions. He does not dispute that other inmates convicted of terrorism-related crimes being held at ADX are subject to similar SAMs. Finally, he does not dispute that the SAMs imposed on him had a rational, penological interest. Therefore, Plaintiff's equal protection claim is properly dismissed.

### 3.    Claim Three: Alleged Eighth Amendment Violation

Plaintiff asserts the SAMs restrictions amount to cruel and unusual punishment, as the restrictions prevent him from accessing media sources; practicing religion; corresponding with or telephoning anyone other than his immediate family, attorney, or consulate; and accessing library materials.  (Compl. at 8.)  Plaintiff further alleges he is being kept segregated without any means of challenging the restrictions.  (*Id.*)

A prison official violates the Eighth Amendment only when two requirements are met: first, the deprivation alleged must be, objectively, sufficiently serious; second, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1970).

### A.    Sufficiently Serious Deprivation

As to the first element, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.  *See Farmer*, 511 U.S. at 834.  The inmate must allege facts showing a deprivation of "a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also id.* at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.").  Conditions may be very harsh but still not meet this standard.  *See Farmer*, 511 U.S. at 833 (prison conditions may be "restrictive and even harsh"); *Ricco v. Conner*, 146 Fed. Appx. 249, 254-55 (10th Cir. 2005) (five-year restriction of visitation privileges did not violate Eighth Amendment); *Hunter v. Ortiz*, 125 Fed. Appx. 241 (10th Cir. 2005) (discussing a claim alleging overcrowding, excessive noise levels, lack of

19

recreation time, and visitation restrictions" and "expressing doubt whether these conditions are sufficient to deprive [the plaintiff] of any of life's necessities") (internal quotation marks omitted).

Plaintiff has not alleged facts sufficient to satisfy this element. He does not allege that he has been deprived of food, warmth, medical care, or exercise. (Compl. at 8.) He does not allege lack of communication with the outside world, but acknowledges that he is still permitted to call and write to his immediate family members, his lawyer and his consulate. *Id.* In his reply, Plaintiff does assert that the SAMs may cause negative effects upon the mental health of a person, leading to depression and other physical problems. (Reply at 10.) He also argues that denying a human being the ability to socialize sufficiently is to deny him essential trait central to his being. (*Id.* at 11.) Plaintiff's allegations are not sufficient to show the denial of identifiable human needs. *Wilson*, 501 U.S. at 304. Furthermore, Plaintiff does not allege that he has any of the negative effects he asserts are a possibility.

### B.      *Unnecessary and Wanton Infliction of Pain*

To violate the Eighth Amendment, a prison official must have a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* at 837; *see also id.* at 838 (explaining that Eighth Amendment liability may not be imposed "solely because of the presence of objectively inhumane prison conditions"); *Wilson v. Seiter*, 501 U.S. 294, 299–300 (1991) (the Eighth Amendment has an "intent requirement" which "mandate[s] inquiry into a prison official's state of mind"). To meet this standard, Plaintiff must assert facts showing that prison

officials employed "subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 839–40. Because "obduracy and wantonness" must be shown, it is not sufficient that "it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see id.* at 320-21 (focusing on whether the measure taken was "applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm") (internal quotation marks omitted).

Plaintiff argues in his reply that four years of being able to communicate and then having communications restricted shows malicious intent by the defendants. (Reply at 11.) In addition, Plaintiff avers that because there can be no other possible justification, the restrictions are only to make his life in prison as hard as possible. (*Id.*) However, Plaintiff has not alleged any facts rising to the level of obduracy or wantonness. In fact, Plaintiff attached to his Complaint a memorandum regarding SAMs indicating that the SAMs are being imposed "based on information of your proclivity for violence." (Compl. at 27.) Plaintiff fails to allege any facts that show the defendants, in their official capacities, possessed a sufficiently culpable state of mind to satisfy this element. Therefore, Plaintiff's Eighth Amendment claim is properly dismissed.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' "Partial Motion to Dismiss" (Doc. No. 35) be GRANTED, and that all claims asserted by Plaintiff, with the exception of the First Amendment

free speech claims, be DISMISSED with prejudice for failure to state a claim upon which relief can be granted.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining*

*Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 21st day of August, 2008.

**BY THE COURT:**

_____

Kathleen M. Tafoya
United States Magistrate Judge