IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01855-PAB-KMT

RICHARD REID,

     Plaintiff,

v.

MR. R. WILEY, Warden Federal Bureau of Prisons,
MR. M. MUKASEY, United States Attorney General, and
MR. H. WATTS, General Counsel Federal Bureau of Prisons,

     Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case involves a claim that Defendants violated Plaintiff's First Amendment rights in imposing Special Administrative Measures ("SAMs") on him. This matter is before the court on "Defendants' Partial Motion to Dismiss Plaintiff's Amended Prisoner Complaint" (Doc. No. 101) filed December 1, 2008.

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Prisoner Complaint and the parties' submissions with respect to this Recommendation. Plaintiff Richard Reid has named as Defendants Mr. Ronald Wiley, the warden of the United States Penitentiary - Administrative Maximum ("ADX") in Florence, Colorado; Mr. M. Mukasey, the former United States Attorney

General; and Mr. Harrell Watts, General Counsel of the Federal Bureau of Prisons ("BOP"). (Am. Prisoner Compl. at 12 [hereinafter "Compl."] [filed November 14, 2008].)

On December 22, 2001, Plaintiff unsuccessfully tried to destroy American Airlines Flight 63 over the Atlantic Ocean by detonating explosives hidden in his shoes. (Def's Partial Mot. to Dismiss Pl.'s Am. Prisoner Compl. at 2 [hereinafter "Mot. to Dismiss"] [filed December 1, 2008]; *see United States v. Reid*, 369 F.3d 619, 620 (1st Cir. 2004)).[1] Plaintiff pleaded guilty to eight terrorism-related offenses. (*Id.*) On January 30, 2003, he was sentenced to life in prison. (*Id.* at 3.) Plaintiff has been incarcerated in ADX since February 2003. (Compl. at 3.) Plaintiff asserts that Defendants have violated his First Amendment rights by imposing SAMs restrictions on him that prevent him from following the tenets of his Muslim religion. (*Id.* at 5.) Plaintiff further asserts that Defendants have violated his First Amendment right of access to information. (*Id.* at 6–7.)

SAMs are special restrictions that may be imposed where determined to be "reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a) (2008). SAMs may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to

---

[1] The court may take judicial notice of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. The court will take judicial notice of Plaintiff's conviction as a public record. *See United States v. Rodriguez-Chavez*, 153 Fed. Appx. 524, 528 (10th Cir. 2005).

protect persons against the risk of acts of violence or terrorism. *Id.* SAMs can be imposed initially for only one year, but may be extended upon a sufficient showing of danger. § 501.3(c). Plaintiff states SAMs restrictions were imposed upon his arrival at ADX in February 2003, and they have been renewed on a yearly basis. (Compl. at 3.) Plaintiff asserts he has been denied access to religious services and materials, has been limited in his access to an imam[2], has been denied access to educational and recreational services, and has been prevented from contacting the media. (*Id.* at 3–4.) Plaintiff states he has been prevented, since 2006, from writing to anyone other than immediate family and two of his aunts, the British Consulate, and U.S. Government agencies. (*Id.* at 4.) Plaintiff also asserts he has been kept in harsher conditions than other inmates housed at ADX. (*Id.*) Plaintiff seeks injunctive relief. (*Id.* at 9.)

## PROCEDURAL HISTORY

On September 24, 2008, Judge Robert E. Blackburn entered an order adopting in part the recommendation of this court, dismissing with prejudice Plaintiff's claims based on due process and equal protection under the Fifth Amendment and cruel and unusual punishment under the Eighth Amendment. (Doc. No. 74 at 3.) Judge Blackburn directed the plaintiff to file an amended complaint to assert his First Amendment claim. (*Id.* at 2.) On October 22, 2008, this case was reassigned to Judge Philip A. Brimmer. (Doc. No. 92.) Plaintiff filed his Amended Prisoner Complaint on November 14, 2008, asserting claims that the defendants violated his First Amendment rights to free exercise of religion and free speech. (Compl.) Defendants filed

---

[2]An imam is the political head of the Muslim community or the person who leads prayer services.

their partial motion to dismiss on December 1, 2008, seeking dismissal only of Plaintiff's free exercise claim. (Mot. to Dismiss.) Plaintiff filed his response on December 19, 2008. (Resp. to and Req. for Denial of Defs.' Partial Mot. to Dismiss [hereinafter "Resp."].) Defendants filed their reply on January 6, 2009. (Defs.' Reply in Supp. of the Partial Mot. to Dismiss Pl.'s Am. Prisoner Compl. [hereinafter "Reply"].) This matter is ripe for review and recommendation.

## STANDARD OF REVIEW

### 1. Pro Se *Plaintiff*

Richard Reid is proceeding *pro se*. Therefore, the court reviews his Complaint liberally and holds it to a less stringent standard than those drafted by attorneys. *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

*2.* *Fed. R. Civ. P. 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, —, 127 S. Ct. 1955, 1965 (2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Further, the court is to make all reasonable inferences in the plaintiff's favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In doing so, the Court distinguishes well-pleaded facts from conclusory allegations. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (citations omitted).

To state a claim, a plaintiff's complaint must "show[ ] that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp.*, 550 U.S. 544, —, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff must allege enough factual matter, taken as true, to make his "claim to relief . . . plausible on its face." 550 U.S. 544, —, 127 S.Ct. 1955, 1974 (2007); *Van Zanen v.*

*Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1129–30 (10th Cir. 2008). This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged. *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied this requirement. *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008). The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer*, 416 U.S. at 236.

## ANALYSIS

*1.      Free Exercise Claim*

In Claim One, Plaintiff asserts that his First Amendment free exercise rights have been violated because (1) he has been prevented from taking part in daily and weekly prayers as required by his religion; and (2) he has been prevented from sufficiently studying the tenets of his religion by being prevented from taking part in correspondence courses, being denied access to religious materials, and having any book orders subjected to excessive delay or rejection. (Compl. at 5.)

It is long established that "[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate's exercise of constitutional rights is necessarily limited, however, "both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and

institutional security." *Pell v. Procunier*, 417 U.S. 817, 822–23 (1974); *see also, O'Lone v. Estate of Shabazz*, 482 U.S. at 348 (1987). Because the religious rights of prisoners must be balanced against the interests inherent in prison administration, free exercise claims of prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. Under this reasonableness test, "'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 89). This test is less restrictive than the test ordinarily applied to non-prisoner free exercise claims because, as the Supreme Court recognized, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone*, 482 U.S. at 348.

In order to allege a constitutional violation based on a free exercise claim, the plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must show that a prison regulation "substantially burdened . . . sincerely-held religious beliefs." *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). "The first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997). Second, prison defendants may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Boles*, 486 F.3d at 1182. The burden then returns to the prisoner to "show that these articulated concerns were irrational." *Kay v. Bemis*, 500 F.3d 1214, 1219 n.3 (10th Cir. 2007) (citing

*Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir.2006)). At that point, courts balance the four factors set forth by the Supreme Court to determine the reasonableness of the regulation:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Boles*, 486 F.3d at 1181 (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).

### A.     *Sincerely Held Religious Belief*

Plaintiff's complaint clearly states he is a practicing Sunni Muslim. (Compl. at 5.) The court cannot make an assessment of the sincerity of Plaintiff's beliefs at this early stage. "The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment," let alone a motion to dismiss. *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352–53 (10th Cir. 1997) (internal quotation omitted) (reversed *en banc* on other grounds). Dismissal on the sincerity prong is appropriate only in the "very rare case[ ]" in which the plaintiff's beliefs are "so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection." *Id.* at 1353 (internal quotation omitted). Such is not the case here. Reviewing Plaintiff's complaint, and taking the factual allegations as true, enough factual support exists to rationally and plausibly conclude that Plaintiff is a sincere devotee of the Sunni Muslim faith.

Defendants do not dispute that Plaintiff's allegations regarding individual or group prayer are related to a sincerely-held religious belief. However, they do assert that "Plaintiff's other miscellaneous allegations in support of his free exercise claim—concerning his inability to access unidentified correspondence courses, magazines and catalogs—do not show a substantial burden on a sincerely held religious belief . . . ." (Mot. to Dismiss at 9 [internal citation omitted].) Citing *Kay v. Bemis*, Defendants argue Plaintiff has not articulated "which courses or reading materials he seeks, nor does he allege a connection between these materials and a sincerely held belief related to Islam—an omission that is fatal to his free exercise claim." (*Id.*) This argument is disingenuous. As the *Kay* court noted, a prisoner's belief in religious practices is constitutionally protected if the belief is genuine and sincere, even if the practice is not doctrinally required by the prisoner's religion. *Kay*, 500 F.3d at 1220. The *Kay* court found it was unnecessary for the plaintiff to show that tarot cards and other items were "necessary" to the practice of the plaintiff's Wiccan faith if his belief was sincerely held. *Id.*

Here, Plaintiff's complaint clearly states he is being prevented from sufficiently studying the tenets of his religion by being prevented from taking part in correspondence courses, and by being denied access to religious materials and religious magazines. (Compl. at 5 [emphasis added].) Although Plaintiff has not identified specific correspondence courses, religious materials, or religious magazines to which he has been denied access, he has stated they are related to the tenets of his religion. As in *Kay*, this court finds Plaintiff is not required to show that the items he claims he is prevented from obtaining are necessary to the practice of his religion. Accordingly, this court finds Plaintiff has alleged sufficient factual information that the

9

denial of the materials has substantially burdened his sincerely-held religious beliefs. Therefore, the court proceeds to the question of whether there are legitimate penological interests that justify the impinging conduct. 486 F.3d at 1182.

### B. *Legitimate Penological Interest*

#### i. *Congregate Prayer*

Defendants assert, and it is undisputed, that ADX is the most secure prison in the federal system, with unique security and control procedures. (Mot. to Dismiss at 5.) They acknowledge there is a congregate prayer ban, but state that the prohibition does not rise to the level of a constitutional violation because it "furthers an obvious penological interest in an institution dedicated to the highest level of security." (Mot. to Dismiss at 5.) In support of their argument, Defendants cite several cases which have upheld similar bans on congregational prayer. (Mot. to Dismiss at 5–7.) Each of the cases cited by Defendants, with the exception of one, was decided by the court upon review of a fully-developed record, including evidence, on summary judgment. *See*, *O'Lone*, 482 U.S. 342; *United States v. Ajaj*, 479 F. Supp. 2d 501 (D.S.C. Mar. 19, 2007); *Jackson v. McBride*, No. 5:06-cv-00518, 2007 WL 2815447 (S.D.W. Va. Sept. 24, 2007). Only one case cited by Defendants, *Brown v. Ridge*, was decided without the benefit of evidence. However, in *Brown*, the court found the plaintiffs had not even alleged a free exercise claim and, therefore, did not analyze the claim except, citing *O'Lone*, to state that the plaintiffs' complaint did not state a constitutional violation as it related to the ability of Muslim inmates to attend the Friday Jumah prayer service. *Brown v. Ridge*, No. Civ. A. 04-0759-A, 2006 WL 1581167, at *14 (W.D. La. Jan. 16, 2006). The *Brown* court noted that nothing in the records

even suggested that any of the plaintiffs were Muslim. *Id.* Furthermore, *Brown* is a Report and Recommendation by the magistrate judge that apparently has not been accepted or rejected by the district judge, and, therefore, has little persuasive value.

Defendants further assert that Plaintiff's group prayer request is impracticable if "one considers the 'group' of fellow ADX inmates with whom Plaintiff could be allowed to pray during Jumah," including co-conspirators in the 1993 World Trade Center bombing. (Mot. to Dismiss at 7–8.) Defendants recite the history of one of these fellow inmates who "continued to assist his co-conspirators in their efforts to destroy the World Trade Center" during the period of time in which he was incarcerated. (*Id.* at 8 [citing *United States v. Salameh*, 152 F.3d 88, 108 (2d Cir. 1998)].)

In this case, Defendants have properly omitted any evidence for the court to consider in ruling on their motion to dismiss and, instead, assert the court should rely on the cases they cite as their sole support for the proposition that Plaintiff's free exercise claim should be dismissed. While the defendants may be able to show at a later time that there are legitimate penological interests that justify the complete ban on group prayer at the ADX, absent a more developed record, the court is unable to complete the four-factor balancing analysis set forth by the Supreme Court in *Turner v. Safley*. For this reason, Defendants' motion to dismiss Plaintiff's freedom to congregate claim is properly denied.

### ii. *Allegations Regarding Items Plaintiff is Prevented from Obtaining*

Defendants have failed to address whether there are legitimate penological interests that justify Defendants' refusal to allow Plaintiff access to correspondence courses, religious

11

materials, and religious magazines. Therefore, it would be inappropriate for the court to dismiss the claim related to this allegation at this time.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Partial Motion to Dismiss Plaintiff's Amended Prisoner Complaint" (Doc. No. 101) be DENIED.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d

at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 14th day of April, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge